

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN

~~XXXXXXXXXXXX~~

ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-2036
Re: Purchase of postage stamps by
the Texas Agricultural Experi-
ment Station at A. & M. College.

We have your letters of March 1, 1940, and March 14, 1940; also two letters from Mr. A. B. Conner, Director, Texas Agricultural Experiment Station, A. & M. College, dated February 28, 1940, and March 13, 1940, which you forwarded to us.

These letters reveal that the Texas Agricultural Experiment Station has purchased postage stamps by executing a voucher made payable to a United States Postmaster. The Station has then issued a check against the Pure Feed Working Fund in payment of the stamps and it has been endorsed by the Postmaster from whom the purchase was made. A reimbursement voucher has been submitted to you by the Station and listed thereon is the amount expended in the purchase of these stamps. They have also attached the original Stamp voucher.

With these facts in mind, you request our opinion as to whether your department would be authorized to issue a warrant payable to the Director of the Agricultural Experiment Station for refund of the stamps so purchased.

We have studied the history of Article 3875, Vernon's Revised Civil Statutes, 1925, in an effort to ascertain from what sources and by what authority the funds used by the Texas Agricultural Experiment Station in purchasing these stamps were derived. Being unable to find any legally created revolving or institutional fund from which such purchases could be made, we wrote you on March 8, 1940, asking for information regarding the source or sources from which the fund might be authorized. In response to this request, we have Mr. A. B. Conner's letter of March 13, 1940, and in connection with this matter he says:

"The Pure Feed working fund is a fund of $10,000 advanced to the Director of the Agricultural Experiment Station by the Board of Direc-

tors of the College many years ago. The
original source of this fund, I understand,
was from the net surplus accrued in the
administration of the Pure Feed Law and
the working fund was set up after an amend-
ment made in the 31st Legislature, Third
Called Session, which amendment, shown in the
General Laws of Texas, Third Called Session,
31st Legislature, 1910, page 16, section 2,
provides that '. . . Said funds (surplus)
. . . shall be used by the board of directors
of the Agricultural and Mechanical College for
making all necessary repairs at the Agricultural
and Mechanical College, erection of buildings
and other improvements, and for such other pur-
poses as may be deemed advisable by the board of
directors, and said funds shall be paid out by
the State Treasurer on warrants issued by the
president and secretary of the board of di-
rectors.' It is my understanding that this
working fund was from monies transmitted by
the State Treasurer on warrants to the College
under this Act."

As far as we have been able to ascertain, the Act of
the Legislature referred to by Mr. Conner is the only source
from which the "working fund" could have been derived. Senate
Bill No. 10, Third Called Session, Thirty-first Legislature,
referred to in Mr. Conner's letter, was an appropriation bill.
It appropriated and transferred all moneys collected under the
provisions of the pure feed laws (including Article 3875, supra)
to the use and benefit of the A. & M. College of Texas and pro-
vided that the State Treasurer should keep an account on his
books to be known as the Pure Feed Fund of the Agricultural and
Mechanical College. Section 2 of said Act provided:

"Section 2. Said funds so appropriated and
collected shall be used by the board of directors
of the Agricultural and Mechanical College for
making all necessary repairs at the Agricultural
and Mechanical College, erection of buildings and
other improvements, and for such other purposes as
may be deemed advisable by the board of directors,
and said funds shall be paid out by the State Treas-
urer on warrants issued by the president and secre-
tary of the board of directors. The said board of
directors shall on the 31st day of August of each
year file a sworn report with the Governor, giving
an itemized statement of all receipts and disburse-
ments of said fund for the year ending on said date."

"The doctrine of ejusdem generis (of the same kind) imports that general words following an enumeration of particular or specific things will be confined to things of the same kind. In brief, the general words so used are not to be construed in the widest sense, but are to be held as applying only to persons or things of the same kind and class as those enumerated." 39 Tex. Jur. 202. See also Farmers' and Mechanics' National Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120. In view of this rule, we are constrained to hold that the Board of Directors of the Agricultural and Mechanical College were not authorized under Senate Bill No. 10, supra, to set up a "working fund" for the Agricultural Experiment Station. The pur- of Senate Bill No. 10, supra, was to appropriate the funds therein referred to for the purpose of erecting buildings and other improvements, and making repairs; under the doctrine of ejusdem generis, the directors could have used said funds only for purposes similar to, or , of the same class as, those expressed in the statute.

Since the moneys appropriated under Senate Bill No. 10, supra, could not have been used for the purpose of establishing the "working fund," the moneys therein properly belong in the State Treasury to the account of the Pure Feed Fund of the Agricultural and Mechanical College of Texas. As a practical matter, we realize that there is not ten thousand dollars ($10,000) standing to the credit of the "working fund" at this time due to the fact that the Experiment Station officials have issued checks against said fund in accordance with the procedure followed for the past several years. In view of this fact, we suggest that the moneys standing to the credit of said "working fund", together with the vouchers and cancelled checks issued by the officials of the Station, be returned to the State Treasury.

If there are any legally created revolving or institutional funds against which the Texas Agricultural Experiment Station may legally issue checks, they may proceed to make their purchases out of such funds and your department, under Article 3875, supra, would be authorized to issue warrants reimbursing them for the amounts so expended.

Yours very truly

ATTORNEY GENERAL OF TEXAS

HAS:RS:wc

Approved Jun 11, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
Approved Opinion Committee by s/BWB Chairman

By s/Walter R. Koch
Walter R. Koch

By s/Harry A. Shuford
Harry A. Shuford